## Ross v. Eagle Coal Company.

(Decided February 16, 1926.)

### Appeal from McCreary Circuit Court.

Master and Servant—Evidence Held to Show Contract did Not Provide for Share in Profits.—In action for share of profits alleged due under contract of employment as general manager of coal company, evidence held to sustain finding that contract did not provide for share in profits.

DENTON & PERKINS, E. T. WESLEY, J. W. SAMPSON and WILLIAM M. CATRON for appellant.

WILLIAM WADDLE for appellee.

Opinion of the Court by Judge Clay—Affirming.

Alleging that he was employed as general manager of the Eagle Coal Company at a stipulated salary and one-fifth interest in the profits of the business, and that he continued in the employment for a period of thirty-four months, during which the profits were $100,000.00, C. I. Ross brought this suit against the Eagle Coal Company to recover $20,000.00. On final hearing his petition was dismissed, and he appeals.

Ross's evidence as to the terms of the contract may be summarized as follows: The Eagle Coal Company was operating at Barren Fork, Kentucky. George B. Durell, its principal stockholder, was its president. In the month of January, 1917, witness was circuit clerk of Pulaski county, and was also in the real estate and lumber business. He made about $1,800.00 in the circuit clerk's office, $2,000.00 in real estate, and $700.00 out of the lumber business. Durell approached him with the view of employing him as general manager of the Eagle Coal Company. Durell attempted to employ him on a salary, but he told Durell he would not work on a salary. Later, Durell proposed a salary of $1,800.00 a year and one-fifth interest in the business. After thinking the matter over he accepted the proposition. He began working on January 6, 1917, and continued to work under the contract for a period of thirty-four months, when the employment was terminated. On January 1, 1918, at his request the salary was changed to $250.00 a month. At Christmas, in 1917, he received $300.00, and the next year a similar sum, but he did not know what they were for. After he left he was employed at a salary of $100.00 a month and $5.00 a day expense money to look after some other matters. He did not demand one-fifth of the profits until more than two years after he quit under the contract. He did not make prior demand because he was afraid he would not get the agency at Lexington, Somerset and Chattanooga coal yards, and was also afraid that Durell would use his unfluence against him in the race which he intended to make for the office of sheriff.

On the other hand Durell testified that he was president and in entire charge of the business. He employed Ross at a salary of $150.00 a month, and the contract did not include one-fifth of the net profits in addition to the salary. At that time they had under consideration the

organization of the Kentucky-Southeastern Coal Corporation, which was to include the Eagle Coal Company, and he did tell Ross he would arrange for him to purchase one-fifth of the stock and help him carry it just as he had done Mr. Carter, an employee, who took stock in the Eagle Coal Company. At the end of the first year they paid Ross a bonus of $300.00. Early in the second year Ross's salary was increased to $200.00 a month. He was paid $300.00 at the end of six months and an additional $300.00 at the end of the year. It was customary to pay the employees a bonus when the business was good, and the additional sums were paid to Ross as a bonus. Other employees also received a bonus.

It is argued that appellant's evidence as to the terms of the contract is strongly supported by the improbability of his leaving other employment in which he could make $4,500.00 a year to take employment with appellee at a salary of $1,800.00 a year. It must not be overlooked that the fees of the clerk's office had decreased until they amounted to only about $1,800.00, and that there was no certainty as to what appellant would have made out of the real estate and lumber business. Moreover, the probability of an increase in salary, which he succeeded in obtaining, together with the opportunity to take stock in the company, as claimed by Mr. Durell, may have been the inducement to take employment with appellee. However this may be, we can not escape the conclusion that appellant's own conduct was altogether inconsistent with his claim that he was to receive a one-fifth interest in the profits of the business. Had his contract so provided, the natural thing would have been to ask for a settlement at the end of each year, or at the furthest, not later than the time when his services under the contract were terminated. Though he says the business was prosperous and claims that his proportion of the profits amounted to about $7,000.00 a year, he never at any time demanded or suggested a settlement during the continuation or at the termination of the contract, but let about two years go by before asserting any claim against the company. The excuse that if he asserted his rights he might lose an agency, or Durell might oppose him in his race for sheriff, is hardly sufficient, as men do not usually forego their right to a substantial sum of money for fear that they may lose something of doubtful value, or for fear that some time in the future they may be opposed

for an office which would pay at most no more than the sum claimed. On the whole, we see no reason to disturb the finding of the chancellor.

Judgment affirmed.